## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19md2885 |
| This Document Relates to: *Hacker*, 7:20cv131 | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## ORDER

This matter is before the Court on Defendants' motion for summary judgment, ECF No. 51. On full consideration, the motion is **GRANTED in part** and **DENIED in part**.

### I. Legal Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at

323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

## II. Background

The Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation. Plaintiff Stephen Hacker raises fifteen claims under Kentucky law[1] against Defendants arising from injuries he alleges were caused by his use of the Combat Arms Earplug ("CAEv2") during his military service. *See* Second Am. Short Form Compl., ECF No. 13.[2] Defendants raise several affirmative defenses, including that Hacker's claims are time barred. *See* ECF No. 15 at pp. 3–9, ¶ 8.

## III. Discussion

Defendants argue that Hacker's claims fail because they are barred by Kentucky's one-year statute of limitations for personal injury claims and because he

---

[1] The Court previously ruled that Kentucky law applies to Hacker's claims. *See* ECF No. 38.

[2] Specifically, Hacker raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI).

cannot prove that a defect in the CAEv2 caused his injuries. Additionally, Defendants argue that Keefer's claims for breach of warranty, negligence per se, unfair trade, and unjust enrichment each fail for other reasons as a matter of law.

1. Hacker's claims are not barred by the statute of repose

Defendants argue that all of Keefer's claims are barred by Kentucky's one-year statute of limitations for personal injury actions.[3] *See* Ky. Rev. Stat. § 413.140(1)(a). By agreement of the parties, Hacker's claims are deemed to have been filed as of June 20, 2019. Defendants assert that his claims are barred because the one-year limitations period began to run, at the latest, when Keefer first became aware of his injury in April 2006. Not so. The Court agrees with Hacker that the Servicemembers' Civil Relief Act ("SCRA") excludes his period of "military service"[4] from the computation of "any period limited by law . . . for the bringing of any action or proceeding in a court."[5] 50 U.S.C. § 3936(a); *see DeTemple v. Leico Geosystems, Inc.*, 576 F. App'x 889, 892 (11th Cir. 2014) ("The SCRA's tolling

---

[3] As a preliminary matter, it appears that the applicable statute of limitations for Hacker's fraud claims is five years. *See* Ky. Rev. Stat. § 413.120(11); *Hazel v. Gen. Motors Corp.*, 83 F.3d 422 (6th Cir. 1996). The Court need not decide this issue because Hacker's fraud claims are timely even if the one-year statute of limitations applies.

[4] The SCRA's definition of "military service" encompasses active duty in the Army and the term "period of military service" means "the period beginning on the date on which a servicemember enters military service and ending on the date on which the servicemember is released from military service or dies while in military service." 50 U.S.C. § 3911(2)–(3).

[5] Curiously, Defendants do not acknowledge the SCRA in their motion. After reviewing the SCRA and pertinent caselaw, the Court finds that a reply brief is unnecessary in resolving Defendants' motion.

command is 'unambiguous, unequivocal, and unlimited.' " (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 513–14 (1993))).[6]

Hacker's period of military service began when he joined the Army in July 1998 and ended when he retired on July 31, 2018. Accordingly, the SCRA tolled the one-year limitations period until July 31, 2018, and Hacker's claims are timely. Defendants' motion on this basis is therefore denied.

2. Disputed issues of material fact preclude summary judgment as to whether a defect in the CAEv2 caused Hacker's alleged injuries

To prevail on his claims, Hacker must prove that Defendants' conduct was the proximate cause of his injuries. *See, e.g.*, *Corder v. Ethicon*, 473 F. Supp. 3d 749, 757–58 (E.D. Ky. 2020). Unless "causation is so apparent that laymen with general knowledge would have no difficulty recognizing it," "a plaintiff must prove medical causation by a reasonable medical probability by using expert medical testimony."

---

[6] The Fifth Circuit's decision in *Pannell v. Continental Can Co.*, 554 F.2d 216 (5th Cir. 1977)—which ordinarily would be binding precent—does not compel a different result. In that case, the court held that a prior version of the SCRA was "inapplicable to a career service man" who "has not shown to have been handicapped by his military service from asserting any claim he had prior to the expiration of the prescribed period." 554 F.2d at 225. Although Hacker retired from the Army after serving 20 years, *Pannell*'s "career service man" interpretation of the prior statute was rejected by the Supreme Court in *Conroy* in favor of a plain language interpretation. *See* 507 U.S. at 514; *id.* at 527 (Scalia, J., concurring) (noting that the Court's holding is contrary to the Fifth Circuit's holding in *Pannell*). Notably, *Conroy*'s plain-language interpretation of the SCRA's tolling command was recently applied by the Eleventh Circuit. *See DeTemple*, 576 F. App'x at 892. Given the Supreme Court's strong rejection in *Conroy* of any interpretation of the SCRA that excludes "career servicemen" or those who cannot show that his military service created a hardship on his ability to assert his claim from coverage under the statute, this Court declines to apply *Pannell*. *See United States v. Smith*, 934 F.2d 270, 274 (11th Cir. 1991) (recognizing prior panel rule but finding that prior precedent was "implicitly overruled by intervening Supreme Court decisions").

*See Fulcher v. United States*, 88 F. Supp. 3d 763, 771 (W.D. Ky. 2015) (citing *Brown-Forman Corp. v. Upchurch*, 127 S.W.2d 615, 621 (Ky. 2004)); *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 657 (E.D. Ky. 2013) (citation omitted). The "quality and substance" of a physician's testimony must "rise[] . . . to the level necessary to prove a particular medical fact." *Fulcher*, 88 F. Supp. 3d at 771 (quoting *Brown-Forman Corp.*, 127 S.W.2d at 621). "Kentucky courts apply a 'totality of the medical testimony' standard, wherein 'terms such as 'distinct possibility' and 'high likelihood' [go] beyond speculation and [amount] to substantial evidence of causation.' " *Id.* (quoting *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 125 (Ky. 1991)). "Under Kentucky law, causation is generally a question of fact for the jury." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009).

Accordingly, Hacker must produce expert evidence that would allow a reasonable jury to find, to a reasonable degree of medical probability, both that (1) the CAEv2 had defects that could have caused his injuries, and (2) that one or more of those defects did in fact cause his injuries. *See Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 106–07 (Ky. 2008); *Adams v. Cooper Indus., Inc.*, No. 03-476, 2012 WL 2339741, at *1 (E.D. Ky. June 19, 2012).

Defendants argue that Hacker has failed to offer sufficient expert testimony of specific causation.[7] According to Defendants, Hacker has not "put forward expert testimony concluding that the alleged fitting issues with the CAEv2 actually prevented [him] from getting a good fit."[8] In support, Defendants assert that "none of Mr. Hacker's experts even attempted fitting him with the CAEv2" and that Dr. Arriaga only observed Hacker "inserting the CAEv2 . . . based on what the military 'taught' him," did not "physically manipulate the CAEv2 to confirm whether Mr. Hacker secured an adequate fit," and did not "take any measurements of Mr. Hacker's ear canal."[9]

---

[7] To the extent Defendants argue that Hacker has failed to offer adequate expert testimony of general causation, the argument is without merit. *See, e.g.*, Dr. David A. Eddins Depo. Tr. at 69:18–70:3 ("I would offer the opinion that the [CAEv2] . . . will not properly fit anyone.").

[8] Focusing on the results of a 2007 audiogram, Defendants additionally argue that Hacker has failed to show that he "experienced hazardous noise at a time when he was using the CAEv2." This argument is without merit. First, Hacker's experts did not base their conclusions solely on the 2007 audiogram. As Dr. Moises Arriaga explained, the 2007 audiogram results "add[] *additional corroboration* of [Hacker's] exposure to toxic noise and changes to his auditory system from military noise while wearing the CAEv2 plugs." *See* Dr. Arriaga Report at 7 (emphasis added). Second, even accepting Defendants' interpretation of the 2007 audiogram results, there is ample additional record evidence to support a jury finding that Hacker wore the CAEv2 during hazardous noise exposures. *See, e.g.*, Dr. Christopher Spankovich Report at 12 ("[B]etween 2003 and 2010, Mr. Hacker was using the CAEv2 and was exposed to dangerous levels of hazardous noise.").

[9] As a threshold finding, Defendants should have raised this argument in their *Daubert* challenges to Dr. Arriaga's and Dr. Spankovich's specific-causation opinions, which they did not. *See Solis v. Tyson Foods, Inc.*, No. 2:02-CV-1174, 2009 WL 10687775, at *6 (N.D. Ala. Sept. 11, 2009) ("A *Daubert* motion can, under certain circumstances, be untimely, and a district court may properly refuse to consider such an untimely evidentiary challenge without running afoul of its obligation to act as a 'gatekeeper.' "); *Largan Precision Co., Ltd. v. Samsung Elecs. Co., Ltd.*, No. 13cv2740, 2015 WL 11251758, at *4 (S.D. Cal. Nov. 30, 2015) ("[T]his dispute may be resolved by way of a motion for summary judgment, but should have been raised in a *Daubert* motion where the parties could have briefed the relevant factors for determining the reliability of Dr. Sasian's testimony.").

While it is true Hacker's experts did not physically manipulate the CAEv2 while in Hacker's ears or measure his ear canal, Hacker has nonetheless produced sufficient expert testimony to raise a triable issue of fact as to whether a design defect in CAEv2 caused his injuries.[10] First, Hacker's experts opine that the CAEv2 was defectively designed and that its design defects present an unreasonable risk of auditory injury to users. *See, e.g.*, Dr. David A. Eddins Report at 2–3; Richard L. McKinley Report at 5–9. Relying on that testimony, which is entirely permissible, *see Sofillas v. Carnival Corp.*, No. 14-23920, 2016 WL 5407889, at *4–5 (S.D. Fla. July 8, 2016), Dr. Arriaga and Dr. Spankovich opine that, "to a reasonable degree of medical and scientific certainty," "the lack of hearing protection provided by the CAEv2 device was the cause of Mr. Hacker's auditory injuries resulting in tinnitus and related injuries." Dr. Arriaga Report at 21; *see* Dr. Spankovich Report at 10 ("[T]he lack of attenuation provided by the CAEv2 caused Mr. Hacker's noise-induced auditory injuries."). While neither expert measured Hacker's ears or "attempted fitting him with the CAEv2," Dr. Arriaga did perform an "otomicroscopic examination" of Hacker's ears and determined that his ear canals were "normal." *See* Dr. Arriaga Report at 17. During his examination of Hacker, Dr.

---

[10] Defendants have filed an omnibus *Daubert* motion that includes a challenge to Hacker's specific-causation expert opinions. This Order presumes that portion of Defendants' motion will be denied.

Arriaga additionally observed the CAEv2's "yellow flange catching the tragus" of Hacker's left and right ears, which he reported "prevented [the CAEv2] from further insertion." *See id.* at 18. Also, both experts performed a differential etiology analysis to determine the cause of Hacker's injuries. *See* Dr. Arriaga Report at 21–24; Dr. Spankovich Report at 9–13. Moreover, Dr. Spankovich explained that attempting to fit Hacker with the CAEv2 was not necessary for his differential etiology opinion. *See* Dr. Spankovich Depo. Tr. at 265:19–24 (explaining that even with "excellent insertion technique," the CAEv2 "has an imperceptible ability to slide out of the ear"). The Court agrees. *See In re Zoloft*, 858 F.3d 787, 795 (3d Cir. 2017) ("[W]e d[o] not require the expert to run specific tests . . . in order for the differential diagnosis to be reliable. . . .").

Based on the "quality and substance" of Dr. Arriaga's and Dr. Spankovich's expert testimony, which the Court presumes is reliable, the Court cannot say that the evidence regarding causation warrants summary judgment for Defendants. Defendants' motion on this basis is therefore denied.

3. Partial summary judgment is warranted on certain claims raised by Hacker

*a. Counts V and VI — Breach of express and implied warranties*

Defendants argue that Hacker's breach of warranty claims fail for lack of privity. In absence of a contract between the parties, "claims for breach of express or implied warranties may proceed only where there is privity between the parties."

*Waterfill v. Nat'l Molding Corp.*, 215 F. App'x 402, 405 (6th Cir. 2007) (applying Kentucky law). As Hacker concedes, his claim for breach of an implied warranty fails as a matter of law because he did not directly purchase his CAEv2 from Defendants. *See Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 969 (E.D. Ky. 2019) ("[P]rivity is a strict requirement for implied warranty claims."). Defendants' motion for summary judgment on Hacker's implied warranty claim is therefore granted.

Hacker argues that his claim for breach of an express warranty satisfies an exception to Kentucky's general privity requirement because there is record evidence that Defendants made express warranties regarding the safety and efficacy of the CAEv2 to ultimate users, including Hacker. *See, e.g.*, Pls.' Resp. Ex. 24 (packaging advertising the CAEv2's Noise Reduction Rating and stating that the CAEv2 "allow[s] clear hearing . . . and instant protection against impulse noises" and "provides continuous noise reduction to ambient noises"); Hacker Depo. Tr. at 180:3–190:7 (testifying that he relied on packaging promising situational awareness and the advertised Noise Reduction Rating). In support, Hacker relies on *Levin v. Trex Co., Inc.*, No. 3:10-cv-692, 2012 WL 7832713 (W.D. Ky. Mar. 5, 2012) and *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727 (W.D. Ky. 2013). In *Naiser*, the district court "[a]nticipate[d] that Kentucky state courts would hold that an express warranty action can be maintained in cases . . . where [the manufacturer's] alleged

written, express warranties were clearly intended for the product's consumers" and therefore allowed an express warranty claim to proceed despite an absence of privity between the plaintiff and defendant. 975 F. Supp. 2d at 738–40. In *Levin*, the court allowed an express warranty claim to proceed despite an absence of privity "based on Plaintiff's position as the expressly intended beneficiary of the warranty issued by Defendant." *See* 2012 WL 7832713, at * 4. Neither case is persuasive. As one court has noted, "*Naiser* is based on an unsupported extension of Kentucky law" and *Levin* is distinguishable on the basis that the manufacturer's warranties in that case "**expressly stated that . . . [it] ran directly to the intended consumer**."[11] *See Simpson*, 397 F. Supp. 3d at 966–68; *see also Corder*, 473 F. Supp. 3d at 768 & n.22 (describing *Naiser* as an "outlier decision[]" and granting summary judgment for defendant on plaintiff's express and implied warranty claims). This view is shared by the Sixth Circuit Court of Appeals. *See Yonts v. Easton Tech. Prods., Inc.*, 676 F. App'x 413, 420 (6th Cir. 2017) (finding *Levin* and *Naiser* "unpersuasive and distinguishable"). The Court agrees and concludes that "the Kentucky Supreme Court's strict application of the privity requirement applies here." *See Simpson*, 397

---

[11] Hacker also cites *Bosch v. Bayer Healthcare Pharms. Inc.*, 13 F. Supp. 3d 730 (W.D. Ky. 2014) and *Huff v. Howmedica Osteonics*, No. 5:14-CV-134, 2014 WL 4918807 (W.D. Ky. Sept. 30, 2014) in support of his argument. Both cases are unpersuasive because they relied on *Naiser*'s erroneous interpretation of Kentucky law. *See Bosch*, 13 F. Supp. 3d at 748–49; *Huff*, 2014 4918807, at *4.

F. Supp. 3d at 968. Defendants' motion for summary judgment on Hacker's express warranty claim is therefore granted.

*b. Count XII — Negligence per se*

Hacker alleges that Defendants were negligent per se because they violated the Environmental Protection Agency's ("EPA") regulations governing the labeling of hearing protection devices by "misrepresenting the [Noise Reduction Rating]" and "failing to include proper fitting instructions to achieve the [Noise Reduction Rating]." *See* 40 C.F.R. § 211.201 *et seq.* Defendants argue that Hacker's claim fails as a matter of law because (1) violations of federal laws and regulations do not constitute negligence per se under Kentucky law, and (2) even if a violation of the EPA regulations could create a cause of action for negligence per se, the regulations "do not apply to products that, like the CAEv2, were designed for use in combat." Hacker concedes that his negligence per se claim fails under Kentucky law, but argues that federal laws and regulations "establish the duty element of [his] negligence claim." Notwithstanding this argument, which the Court need not decide to resolve the instant motion, Hacker's negligence per se claim fails as a matter of law because Kentucky law limits negligence per se to violations of Kentucky statues and not violations of federal laws. *See T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530, 532–33 (Ky. 2006). Defendants' motion for summary judgment on Hacker's negligence per se claim is therefore granted.

*c. Count XIII — Unfair trade*

Hacker raises a claim under the Kentucky Consumer Protection Act ("KCPA"), Ky. Rev. Stat. §§ 367.110, *et seq.* "[T]he KCPA provides a private right of action for any person who (1) purchases or leases goods or services (2) for personal, family, or household purposes and (3) is injured as a result of a seller's prohibited practice or act." *Simpson*, 397 F. Supp. 3d at 961. Defendants argue that this claim fails (1) for lack of privity, and (2) because Hacker purchased the CAEv2 for use during his employment by the military rather than for "personal, family, or household purposes." As with his breach of warranty claims, Hacker responds that privity is not required because Defendants made direct warranties to him regarding the CAEv2. The Court disagrees. Kentucky law requires privity for a claim under the KCPA. *See Skilcraft Sheetmetal, Inc. v. Ky. Mach., Inc.*, 836 S.W.2d 907, 909 (Ky. Ct. App. 1992) ("The language of the [KCPA] plainly contemplates an action by a purchaser against his immediate seller . . . The legislature intended that privity of contract exist between the parties in a suit alleging a violation of the [KCPA]."). Numerous Kentucky Courts of Appeals have cited *Skilcraft* and interpreted the text of the KCPA "to mean that an individual must be a purchaser with privity of contract in order to have standing to bring an action under the [KCPA]." *Simpson*, 397 F. Supp. 3d at 962 (collecting cases). Additionally, "[t]he Sixth Circuit and the majority of the federal district courts have also followed suit in holding that privity is required

under the KCPA." *Id.* at 963 (collecting cases).[12] Defendants' motion for summary judgment on Hacker's claim under the KCPA is therefore granted.

*d. Count XV — Unjust enrichment*

Defendants argue that Hacker cannot prevail on his unjust enrichment claim "absent some indication that [he] cannot obtain complete relief under his other claims" and "there is no suggestion that the legal remedies alleged in Mr. Hacker's other counts are not adequate to compensate him for his alleged injuries." Hacker responds that his claim should not be dismissed because "the availability of an adequate legal remedy is still an open question." The Court agrees. Defendants' conclusory allegation that Hacker's legal remedies are sufficient to compensate him does not satisfy their burden on summary judgment to avoid an unjust enrichment claim. *See Burton*, 2020 WL 5809992, at *9. The matter remains an open question for the Court at trial. *See Superior Steel, Inc. v. The Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 782 (Ky. 2017).

Accordingly,

1. Defendants' Motion for Summary Judgment, ECF No. 51, is **GRANTED in part** and **DENIED in part**.

---

[12] Again, "*Naiser* is an outlier." *See Simpson*, 397 F. Supp. 3d at 963; *see also Burton v. Ethicon Inc.*, No. 5:20-280, 2020 WL 5809992, at *8 (E.D. Ky. Sept. 29, 2020) ("It does not appear that any judge in this district has applied the exception [to the KCPA's privity requirement] created in *Naiser* and the undersigned declines to do so now.").

2. The motion is **GRANTED** as to Hacker's claims for breach of express warranty (Count V), breach of implied warranty (Count VI), negligence per se (Count XII), and unfair trade (Count XIII).

3. The motion is otherwise **DENIED**.

**DONE AND ORDERED** this 4th day of February 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**