## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE: 3M COMBAT ARMS
EARPLUG PRODUCTS
LIABILITY LITIGATION

This Document Relates to:
*Hacker*, 7:20cv131

Case No. 3:19md2885

Judge M. Casey Rodgers
Magistrate Judge Gary R. Jones

## ORDER

This matter is before the Court on Plaintiff's motion for summary judgment, ECF No. 50. On full consideration, the motion is **GRANTED in part** and **DENIED in part**.

### I. Legal Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).

## II. Background

The Court assumes the parties' familiarity with the general factual allegations and nature of this multidistrict litigation. Plaintiff Stephen Hacker raises fifteen claims under Kentucky law[1] against Defendants arising from injuries he alleges were caused by his use of the Combat Arms Earplug ("CAEv2") during his military service. *See* Second Am. Short Form Compl., ECF No. 13.[2] Defendants raise several affirmative defenses, including that the actions of a nonparty, the United States, are the actual, contributing, intervening, or superseding cause of Hacker's injuries. *See* ECF No. 15 at pp. 3–9, ¶¶ 4, 14, 16–17.

---

[1] The Court previously ruled that Kentucky law applies to Hacker's claims. *See* ECF No. 38.

[2] Specifically, Hacker raises claims for Design Defect – Negligence (Count I), Design Defect – Strict Liability (Count II), Failure to Warn – Negligence (Count III), Failure to Warn – Strict Liability (Count IV), Breach of Express Warranty (Count V), Breach of Implied Warranty (Count VI), Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), Fraud and Deceit (Count X), Gross Negligence (Count XI), Negligence Per Se (Count XII), Consumer Fraud and/or Unfair Trade (Count XIII), Unjust Enrichment (Count XV), and Punitive Damages (Count XVI).

## III. Discussion

Hacker moves for summary judgment on Defendants' affirmative defenses relating to the alleged fault of the United States military in causing his injuries. He argues that the Defendants' apportionment defense fails as a matter of law because the United States has never been a party to this litigation, as required by Kentucky's apportionment statute. He further argues that the Defendants' affirmative defenses relating to the United States' role in causing his injuries fail as a matter of law for the additional reason that Defendants have not provided sufficient evidence to show that the United States proximately caused any portion of his injuries. In response, Defendants concede that their apportionment defense fails but argue that they have provided sufficient record evidence to raise a triable issue of fact as to their other government-fault defenses.

The Court finds that Defendants have offered sufficient evidence to create a fact dispute as to whether the United States military proximately caused Hacker's injuries. Hacker argues that Defendants' government-fault affirmative defenses fail because Defendants have failed to offer expert medical testimony establishing a causal link between the United States military's conduct and his injuries. He further argues that even if expert testimony were not required, Defendants have failed to introduce sufficient non-expert evidence to create a triable issue of fact on proximate causation. It is Defendants' burden to demonstrate proximate cause. *See Logan v.*

*Cooper Tire & Rubber Co.*, No. 10-03, 2011 WL 3267831, at *2–3 (E.D. Ky. July 29, 2011). For the following reasons, the Court finds that Hacker's motion is due to granted, in part, and denied, in part.

As a preliminary matter, the Court must determine whether Defendants' government-fault defenses involve a question of medical causation requiring expert testimony. *See Fulcher v. United States*, 88 F. Supp. 3d 763, 771 (W.D. Ky. 2015); *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 657 (E.D. Ky. 2013). This inquiry turns on the theory of injury alleged. *See Garrison v. Sam's E., Inc.*, No. 1:16-CV-152, 2019 WL 3535991, at *3–4 (W.D. Ky. Aug. 2, 2019). Defendants identify three alleged omissions by the United States military as potential alternative causes of Hacker's injuries: (1) its failure to ensure Hacker was fit with the CAEv2 by medically trained personnel and to subsequently conduct annual examinations of the fit of his CAEv2, (2) its failure to conduct annual audiograms for Hacker in certain years, and (3) its failure to adequately instruct Hacker on the proper use of his CAEv2. The Court finds that Defendants' second theory of injury—that a failure to conduct annual audiograms in certain years contributed to Hacker's injuries—is a medical question about causation that lay jurors could not answer based on experience and common sense. *Cf. Ashland Hosp. Corp. v. Lewis*, 581 S.W.3d 572, 579 (Ky. 2019) (in medical malpractice case, holding that expert medical testimony was necessary to establish that earlier medical intervention would have limited the

plaintiff's injuries). Defendants do not present expert medical testimony that the military's alleged failure to conduct annual audiograms in certain years contributed in any way to Hacker's injuries. Accordingly, Hacker's motion is granted as to this theory of causation.

Defendants' first and third theories of injury, however, do not present a medical question requiring expert medical testimony. While medical expert testimony is necessary to establish a causal connection between Hacker's injuries and his exposure to noises during his military service, *see Lacefield v. LG Elecs., Inc.*, No. 3:06-12, 2008 WL 544472, at *4, *7 (E.D. Ky. Feb. 26, 2008) (concluding that expert medical testimony was necessary to show that the volume of a cell phone's ring caused the plaintiff's hearing loss and tinnitus), the record contains sufficient medical expert testimony to support a jury finding that Hacker's military noise exposure caused his hearing injuries. However, the next link in these two theories of causation—that Hacker was exposed to injurious noises because the United States military did not ensure his CAEv2 earplugs were properly fitted or provide him with adequate instruction on the proper use of the CAEv2—is not the type of medical question that requires expert medical testimony under Kentucky law. *Cf. Tatham v. Palmer*, 439 S.W.2d 938, 939 (Ky. 1969) ("It is within the realm of common knowledge that a severe blow to the head will cause headaches and that severe shock . . . will produce nervousness . . . ."); *Garrison*, 2019 WL 3535991, at

*3 ("Jurors do not need a medical degree to find that falling results in pain, so Plaintiff does not need expert testimony on this particular question.").

There is sufficient record evidence to create a triable issue of fact on these theories of causation. First, the regulation governing the Army Hearing Program required, among other things, "that medically trained personnel fit individuals with preformed earplugs," *see* Tuten Report at 9 (quoting DA Pamphlet 40-501), and Department of Defense ("DoD") regulations state that "[p]ersonnel shall receive adequate and effective training in the proper care and use of personal hearing protectors," *see* DoD Instruction 6055.12 ¶ 6.6.10. Further, based on Hacker's deposition testimony and interrogatory responses, there is evidence that the United States military did not fit him with the CAEv2 or provide him adequate instructions on using the CAEv2. *See* Response to Interrogatory No. 28 ("I do not recall a 'fitting' process."); Hacker Depo. Tr. at 157:14–16 (testifying that he does not remember being fitted with the CAEv2 by an audiologist or another technician); 127:14–21 (making no mention of the flange-fold fitting technique when asked what instructions he received on inserting the CAEv2). Thus, based on the evidence, a jury could "reasonably infer from common or a layman's knowledge that" Hacker's hearing-related injuries occurred when he was exposed to loud noise due to inadequate fitting of his CAEv2 or instruction on the proper use of his CAEv2. *See*

*Taylor v. Brandon*, No. 3:14-cv-588, 2019 WL 7454712, at *2 (W.D. Ky. Sept. 30, 2019) (citation omitted).

Accordingly,

1. Hacker's motion for summary judgment, ECF No. 50, is **GRANTED in part** and **DENIED in part**.

2. The motion is **GRANTED** as to (1) Defendants' apportionment defense and (2) Defendants' other government-fault affirmative defenses to the extent those defenses are based on the United States military's alleged failure to conduct annual audiograms for Hacker.

3. The motion is otherwise **DENIED**.

   **DONE AND ORDERED** this 17th day of February 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**